IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TANIA JEAN MANCINO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  20-4234 |
| Commissioner of Social Security[1] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                         November 30, 2021

Tania Jean Mancino ("Plaintiff") seeks review of the Commissioner's decision

denying her application for disability insurance benefits ("DIB").  For the reasons that

follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is not

supported by substantial evidence and remand for further proceedings pursuant to

sentence four of 42 U.S.C. § 405(g).

## I.    **PROCEDURAL HISTORY**

Plaintiff protectively filed for DIB on February 16, 2016, alleging disability

beginning on October 2, 2014, as a result of head trauma, back pain, deteriorated disc and

neck pain, and weakness in both legs.  Tr. at 74-75, 300.[2]  Plaintiff's application was

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action.  No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

[2]To be entitled to DIB, Plaintiff must establish that she became disabled on or before her date last insured, December 31, 2019.  Tr. at 297.  Thus, the relevant period is from October 2, 2014, Plaintiff's alleged disability onset date, through December 31, 2019, the date Plaintiff was last insured for purposes of DIB.

denied initially, id. at 62-73, and Plaintiff requested a hearing before an ALJ, id. at 108-09, which took place on March 14, 2018.  Id. at 940-64.[3]  On May 30, 2018, the ALJ found that Plaintiff was not disabled.  Id. at 79-90.  The Appeals Council remanded the case to the ALJ on November 1, 2018, noting that despite finding limitations in Plaintiff's abilities related to her mental impairments, the residual functional capacity ("RFC") assessment did not include any mental work-related limitations, which may impact the ALJ's determination that Plaintiff could perform her past relevant work.  Id. at 98.  The Appeals Council directed the ALJ to obtain updated evidence concerning Plaintiff's impairments, including degenerative disc disease, further consider Plaintiff's RFC, and obtain vocational evidence to allow a comparison between Plaintiff's RFC and the mental and physical demands of her past relevant work.  Id. at 99.

A different ALJ held a second administrative hearing on September 19, 2019, at which Plaintiff and a vocational expert ("VE") testified.  Tr. at 38-61.  On October 29, 2019, the ALJ found Plaintiff was not disabled and could perform her past relevant work. Id. at 12-30.  On June 30, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's October 29, 2019 decision the final decision of the Commissioner.  Id. at 1-3; see also 20 C.F.R. § 404.981.

---

[3]The transcript of this hearing was not contained in the administrative record, as noted by Plaintiff in her brief.  Doc. 10 at 1 n.1.  My staff contacted the Defendant, which filed the transcript of the March 14, 2018 hearing as a supplement to the record, docketed as Document 19.  In response to that filing, Plaintiff's counsel confirmed via email that the issues presented in her brief and reply focus on the second administrative hearing held on September 19, 2019.

Plaintiff commenced this action in federal court on August 28, 2020, Doc. 1, and

the matter is now fully briefed and ripe for review.  Docs. 10, 11, 14.[4]

## II.   LEGAL STANDARD

To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for . . . not less than twelve

months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process,

evaluating:

> 1.      Whether the claimant is currently engaged in
> substantial gainful activity;
>
> 2.      If not, whether the claimant has a "severe
> impairment" that significantly limits her physical or mental
> ability to perform basic work activities;
>
> 3.      If so, whether based on the medical evidence,
> the impairment meets or equals the criteria of an impairment
> listed in the listing of impairments ("Listings"), 20 C.F.R. pt.
> 404, subpt. P, app. 1, which results in a presumption of
> disability;
>
> 4.      If the impairment does not meet or equal the
> criteria for a listed impairment, whether, despite the severe
> impairment, the claimant has the RFC to perform her past
> work; and

_____

[4]The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C.
§ 636(c).  See Standing Order, In RE:  Direct Assignment of Social Security Appeal
Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Doc. 18.  The case
was originally assigned to the Honorable Henry Perkin, who has now retired from the
bench, and Plaintiff consented to proceeding before Judge Perkin.  Doc. 4.  Upon Judge
Perkin's then-impending retirement, the case was reassigned to me and Plaintiff
consented to proceed before me.  Doc. 18.

> 5.      If the claimant cannot perform her past work,
> then the final step is to determine whether there is other work
> in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R.

§ 404.1520(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the

burden shifts to the Commissioner at the fifth step to establish that the claimant is capable

of performing other jobs in the local and national economies, in light of her age,

education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88,

92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r

of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is

whether there is substantial evidence to support the Commissioner's conclusion that

Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion," and must be "more than a mere

scintilla."  Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552

(3d Cir. 2005)).  The court has plenary review of legal issues.  Schaudeck, 181 F.3d at

431.

## III.   DISCUSSION

### A.   ALJ's Findings and Plaintiff's Claims

The ALJ found that Plaintiff suffers from the severe impairments of degenerative

disc disease ("DDD") of the cervical spine with radiculopathy, obesity, and cervicogenic

headaches.  Tr. at 15.  In addition, the ALJ found that Plaintiff suffers from the non-

severe impairments of lumbar DDD and lumbar radiculopathy, right shoulder partial tear of the distal supraspinatus tendon, left shoulder degenerative changes, cervical radiculopathy, hypertension, high cholesterol, hyperlipidemia, insomnia, knee arthritis, mild traumatic brain injury ("TBI")/concussion/neurocognitive disorder, anxiety, and depression.  Id. at 15-18.  The ALJ next found that Plaintiff did not have an impairment or combination of impairments that met the Listings, id. at 20, and that Plaintiff retained the RFC to perform light work with limitations to occasional crawling, stooping, crouching, kneeling, and climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; and occasional exposure to humidity and extreme cold.  Id. at 21.  Based on the testimony of the VE, the ALJ found that Plaintiff could perform her past relevant work as a telephone operator.  Id. at 30.

Plaintiff claims that the ALJ erred in (1) finding that Plaintiff's mental impairments were not severe, (2) failing to properly evaluate the medical opinion evidence regarding Plaintiff's mental impairments, and (3) failing to include mental limitations in the RFC assessment and hypothetical that the ALJ found credible.  Doc. 10. Defendant responds that the ALJ's determination that Plaintiff's cognitive and mental impairments were not severe is supported by substantial evidence, the ALJ properly evaluated the opinion evidence, and the ALJ did not err in failing to include mental limitations in the RFC assessment.  Doc. 11.

### B.    Plaintiff's Claimed Limitations

Plaintiff was born on July 2, 1961, making her 54 years old at the time of her application, and 58 at the time of the ALJ's most recent decision.  Tr. at 41, 62, 74.  She

5

completed one year of college and has worked as a switchboard operator and cashier.  Id. at 42-43, 56.

At the administrative hearing held on September 19, 2019, Plaintiff explained when she stopped working in 2014, she had fallen at work, hitting her head and suffering a concussion.  Id. at 44.  As a result, she was having memory problems and had trouble focusing.  Id.  At that point, she also had pain in her back and neck and severe headaches.  Id. at 45.  She testified that more recently, she has aches in her hands, soreness in her legs and feet, and unusual sensations in her arms.  Id.  She explained that she cannot walk far and that her husband will let her out of the car at the door of a restaurant before parking the car.  Id. at 47.  Similarly, Plaintiff testified that she can only stand for five minutes before the pain in her knees and ankles requires her to sit, but that sitting causes pain in her lower back and legs.  Id. at 47-48.  In addition, when Plaintiff tries to lift or carry things, she suffers from pain in her legs, and she can lift a half gallon of milk but not a gallon.  Id. at 48, 52.  She continues to have problems with her memory and says that it has gotten worse, and she continues to have headaches at least once or twice a week.  Id. at 54.  Plaintiff has undergone neck and back injections and done physical therapy with no long-term positive relief.  Id. at 52, 53.[5]

---

[5]The record also contains a series of function reports and narrative statements from Plaintiff's friends.  Each addressed both physical and mental limitations.  Because Plaintiff's claims involve her mental limitations or limitations imposed by her mental impairments, I limit this recitation to the mental limitations relevant to the discussion of Plaintiff's claims.  Denise McLaughlin completed a Function Report regarding Plaintiff on April 15, 2016, noting Plaintiff's confusion, random loss of direction while driving, difficulty focusing, forgetfulness, and loss of memory.  Tr. at 318-25.  In a letter dated November 29, 2017, Christine Saraceno noted that she had observed Plaintiff's memory

C.   **Summary of the Medical Record**[6]

Plaintiff has a history of vertigo and cervicogenic headaches.  See tr. at 520.

(11/9/10 – treatment notes from Emil Matarese, M.D.).  In addition, Dr. Matarese's notes

disclose a history of syncopes[7] and falls.  See id. at 537 (3/6/12 – emotional distress

brought on two syncopes), 540 (5/24/12 – notation of falling more including March 20,

2012 syncope and fall), 551 (9/29/12 – notation of a fall at a casino on August 16, 2012),

563 (8/18/14 – notation of syncope in June 2014).  With respect to the relevant period,

the medical record includes treatment notes from the emergency department at St. Mary's

Medical Center from October 2, 2014, indicating that Plaintiff developed tingling and

weakness in her right arm and right leg while working at St. Mary's.[8]  Id. at 449.   She

was evaluated for a possible stroke, but the diagnosis was cervical radiculopathy and

loss and hand tremors as a result of Plaintiff's falls.  Id. at 350.  In a letter dated January
27, 2018, Denise Forte noted that Plaintiff suffers from a state of confusion, has difficulty
processing what is being said to her, and has difficulty engaging in conversation.  Id. at
351.  In an undated letter, Cynthia Gambino noted Plaintiff's forgetfulness and related an
incident where Plaintiff got confused while driving and had to pull over to wait for the
police.  Id. at 357.

[6]As previously noted, Plaintiff's claims focus primarily on her mental
health/cognitive impairments.  Therefore, I will focus primarily on the records relevant to
the assessment of those impairments, recognizing that pain may have also impacted
Plaintiff's mental abilities.

[7]A syncope is "a temporary suspension of consciousness due to generalized
cerebral ischemia."  Dorland's Illustrated Medical Dictionary, 32nd ed. (2012)
("DIMD"), at 1818.

[8]There are also notations from this incident that Plaintiff fell from a chair and
tripped over a rolling chair hitting the right side of her head on the floor and part of the
chair wheel.  Tr. at 435, 463, 467.

occipital neuralgia.[9]  Id. at 455.  A cervical MRI revealed a disc bulge at C5-C6, causing

mild bilateral foraminal narrowing.  Id. at 458.  Lisa Nocera, M.D., performed bilateral

occipital nerve blocks before Plaintiff's discharge from the hospital on October 3, 2014.

Id. at 457.

Plaintiff continued to experience falls during the relevant period, some of which,

as will be discussed, had effects on her memory and concentration.  See tr. at 715 (6/4/16

– Aria Health Emergency Department after fall at Parx bathroom, complaints of head

pain and left wrist pain), 775 (8/16/17 – Dr. Matarese noted fall two weeks prior with

neck pain, headache, and gradual loss of short-term memory), 907 (6/17/19 – Jessica

Baker, D.O., noted fall two weeks prior with tenderness and bruising to the right temple).

After the St. Mary's fall on October 2, 2014, Dr. Matarese, Plaintiff's treating

neurologist,[10] examined Plaintiff on October 17, 2014, at which time she was

complaining of persistent headaches, right ear pain, recurrent dizziness with instability of

gait, recurrent tinnitus in the right ear and vertigo precipitated by rapid change in body or

head position, weakness and numbness in the right arm and leg, difficulty focusing her

attention and concentrating, and impaired memory.  Id. at 463.  At that time, Dr.

Matarese noted that Plaintiff's attention, concentration, and short- and long-term memory

were normal.  Id. at 571.  Dr. Matarese concluded that Plaintiff suffered a mild TBI with

---

[9]Occipital neuralgia is "pain in the distribution of the occipital nerves, due to
pressure or trauma to the nerve."  DIMD at 1262.

[10]Prior to the 2014 fall, Dr. Matarese had treated Plaintiff for neck pain and
headaches.  See tr. at 520 (11/9/10), 522 (10/23/11), 523 (10/25/11), 528 (11/23/11), 533
(1/4/12), 537 (3/6/12), 540 (5/24/12), 546 (6/29/12), 554 (9/29/12), 557 (3/24/13), 563
(8/18/14).

persistent cognitive and vestibular dysfunction, a cervical whiplash injury, cervical and lumbar strain/sprain, and traumatic injury to the right ear.  Id. at 465.

Dr. Matarese's subsequent treatment notes evidence ongoing problems with Plaintiff's attention, concentration, and memory.  See tr. at 577 (1/8/15 – limited attention and concentration and impairment in short- and long-term memory),[11] 582-83 (3/10/15 – limited attention and concentration, impaired short- and long-term memory, delays in answering simple questions, limited fund of knowledge of historic and concurrent events), 586 (5/14/15 – same and persistent distractability and delays in naming and word finding), 589 (8/14/15 – same and slow in following one-step commands, coordination testing of the right hand is slow), 592-93 (11/12/15 – same), 749 (2/1/16 – same).  Dr. Matarese noted improvement in Plaintiff's memory on May 5, 2016, when he found she had normal attention, concentration, and memory.  Id. at 752.  This noted improvement was short-lived, however, as Dr. Matarese noted limited attention and concentration with persistent distractibility and impairment in memory again in August 2016, after Plaintiff suffered another fall in June 2016.  Id. at 753-55; see also id. at 759 (10/27/16 – limited attention and concentration, impaired short- and long-term memory, delays in naming and word finding, trouble following one-step commands, limited fund of knowledge for current and historic events).  Attention, concentration, and memory were again normal on December 20, 2016.  Id. at 762.

---

[11]At this office visit, Dr. Matarese also noted that Plaintiff brought a friend who reported that Plaintiff "becomes easily confused and disoriented," including getting lost on the way home from the local Home Depot.  Tr. at 577-78.

On November 3, 2014, psychologist Luke W. Amann, Psy.D., conducted a neuropsychological evaluation at Dr. Matarese's request, concluding that Plaintiff had mild to moderate impairment of brain functioning, with deficits Dr. Amann noted were "consistent with the cognitive sequelae of a cerebral concussion," including problems in abstract reasoning, concentration, cognitive flexibility and incidental memory.  Tr. at 467-75.  The doctor recommended cognitive rehabilitation, id. at 474, and Plaintiff later reported that workers' compensation would not cover such treatment.  Id. at 581.  The doctor noted Plaintiff was having difficulty adjusting to the effects of her injury and presented with an anxious depression.  Id. at 474.  Dr. Amann recommended regular psychotherapy and psychopharmacological intervention to help manage her mood and symptoms.  Id.

Ronald Luber, D.O., Plaintiff's primary care physician at the time, also noted Plaintiff's difficulty concentrating after the October 2014 fall, see tr. at 646 (1/3/15), with slight improvement noted on March 17, 2015, id. at 645, but subsequent notations indicating decreases in Plaintiff's memory and concentration.  See id. at 638 (4/10/15), 635 (6/9/15), 632 (8/18/15).

Plaintiff began treating with Dr. Baker as her primary care physician on May 12, 2016, at which time Dr. Baker diagnosed Plaintiff with adjustment disorder[12] and

---

[12]"The presence of emotional or behavioral symptoms in response to an identifiable stessor is the essential feature of adjustment disorders. . . .  The stressor may be a single event . . . , or there may be multiple stressors. . . .  Stressors may be recurrent . . . or continuous [and] may affect a single individual, an entire family, or a larger group or community . . . ."  Diagnostic and Statistical Manual of Mental Disorders, 5th ed. (2013) ("DSM 5"), at 287.

insomnia, referred Plaintiff to a therapist, and prescribed eszopiclone[13] for insomnia.  Tr. at 744-45.  It does not appear that Plaintiff ever sought mental health treatment as Dr. Baker noted in subsequent treatment notes that Plaintiff had not contacted a therapist, id. at 740 (6/16/16), 737 (7/21/16), no mental health treatment notes are contained in the record, and Ronald Karpf, Ph.D., noted in his May 2016 consultative psychiatric evaluation that Plaintiff has never been in a psychiatric hospital and had never had any outpatient psychotherapy or counseling.  Id. at 680.  On June 16, 2016, Dr. Baker noted that Plaintiff reported a recent fall at a casino, diagnosed Plaintiff with a concussion, and noted that Plaintiff was having difficulty concentrating and thinking, and that she felt irritable and "foggy."  Id. at 740.

Dr. Karpf performed a consultative psychiatric evaluation on May 24, 2016, during which he noted that Plaintiff's attention and concentration were mildly impaired, recent and remote memory skills were impaired, cognitive functioning was below average, and insight and judgment were fair.  Tr. at 682.  Dr. Karpf diagnosed Plaintiff with major depressive disorder ("MDD"), recurrent, moderate, generalized anxiety disorder ("GAD"), panic disorder, and mild neurocognitive disorder.[14]  Id. at 683. The

---

[13]Eszopiclone is a sedative used to treat insomnia.  See https://www.drugs.com/mtm/eszopiclone.html (last visited Nov. 1, 2021).

[14]The essential feature of MDD is a clinical course that is characterized by one or more major depressive episodes.  DSM 5 at 160-61.  A major depressive episode is a period of at least two weeks during which there is either depressed mood or the loss of interest or pleasure in nearly all activities.  Id. at 163.  "The essential feature of GAD is excessive anxiety and worry (apprehensive expectation) about a number of events or activities," and where "[t]he intensity, duration, or frequency of the anxiety and worry is out of proportion to the actual likelihood or impact of the anticipated event."  Id. at 222.

doctor opined that Plaintiff cannot shop by herself, manage or budget money, or take public transportation.  Id. at 682-83.

Dr. Karpf completed a Medical Source Statement, concluding that Plaintiff had mild impairment in her abilities to understand, remember, and carry out simple instructions, and make judgments on simple work-related decisions; moderate limitation in her ability to interact appropriately with the public, supervisors, coworkers, and respond appropriately to usual work situations and changes in a routine work setting; and marked limitation in her abilities to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions.  Tr. at 685-86.

At the initial consideration stage, Karen Weitzner, Ph.D., concluded from her review of the records that Plaintiff was not significantly limited in the abilities to carry out very short and simple instructions, and was moderately limited in the abilities to carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting.  Tr. at 69-71.

---

"Panic disorder refers to recurrent unexpected panic attacks. . . . A panic attack is an abrupt surge of intense fear or intense discomfort that reaches a peak within minutes, and during which time four or more of a list of 13 physical and cognitive symptoms occur." Id. at 209.  The diagnostic criteria for mild neurocognitive disorder include evidence of modest cognitive decline from a previous level of performance in one or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual motor, or social cognition), which do not interfere with capacity for independence in everyday activities, which do not occur in the context of delirium and are not better explained by another mental disorder.  Id. at 605.

### D.      Plaintiff's Claims

Plaintiff's three claims are related and all involve the ALJ's consideration of the evidence regarding the limitations imposed by her mental/cognitive impairments.  She first claims that the ALJ erred in finding that her mental impairments were not severe. Doc. 10 at 2-8; Doc. 14 at 1-4.  Defendant responds that the ALJ properly found that Plaintiff's cognitive and mental impairments were not severe.  Doc. 11 at 6-13.

An error in the second step of the sequential evaluation is harmless provided the ALJ determines that one of the claimant's impairments is severe because the ALJ is required to consider the impact of both severe and non-severe impairments when assessing a claimant's RFC.  See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 144-45 & n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."); see also 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").  Here, the ALJ found several impairments severe, thus the question is whether the ALJ included all of the credibly established limitations in the RFC and in the hypothetical posed to the VE. Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)).

In this respect, Plaintiff argues that the ALJ failed to properly consider the medical opinions in the record regarding the limitations related to her mental functioning.  Doc. 10 at 8-17; Doc. 14 at 4-6.  Defendant responds that the ALJ properly declined to give

any weight to Dr. Matarese's statements that Plaintiff was disabled, Dr. Matarese's medical records were not opinions subject to weighing, and the ALJ properly considered the opinions of Drs. Karpf and Weitzner.  Doc. 11 at 13-20.

A treating physician's opinion is generally entitled to greater weight than that of a physician who conducted a one-time examination of the claimant as a consultant.  See, e.g., Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994) (citing Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993)).[15]  When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not "reject evidence for no reason or for the wrong reason."  E.g., Brown v. Astrue, 649 F.3d 193, 196-97 (3d Cir. 2011) (citation omitted); Rutherford, 399 F.3d at 554 (quoting Mason, 994 F.2d at 1066); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (same); see also 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  A physician's statement that a Plaintiff is "disabled" or "unable to work" is not dispositive.  Adorno, 40 F.3d at 47-48; see also 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  Rather than blindly accept a medical opinion, the ALJ is required to review all the medical findings and other evidence and "weigh the relative worth of [the]

---

[15]Effective March 27, 2017, the Social Security Administration amended the rules regarding the evaluation of medical evidence, eliminating the assignment of weight to any medical opinion.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  Because Plaintiff's application was filed prior to the effective date of the new regulations, the opinion-weighing paradigm is applicable.

treating physician's report."  Adorno, 40 F.3d at 48.  The ALJ is "free to accept some medical evidence and reject other evidence, provided that [s]he provides an explanation for discrediting the rejected evidence."  Zirnsak, 777 F.3d at 614.

With respect to the medical opinions regarding Plaintiff's mental limitations, consultative examiner Dr. Karpf and Dr. Weitzner, the physician who reviewed the medical record at the initial consideration stage, offered opinions finding various levels of limitation in Plaintiff's mental abilities.  As noted in the prior summary of the medical evidence, Dr. Karpf diagnosed Plaintiff with MDD, recurrent, moderate, GAD, panic disorder, and mild neurocognitive disorder, tr. at 683, and found that Plaintiff had marked limitation in her abilities to understand, remember and carry out complex instructions, and make judgments on complex work-related decisions; moderate limitations in interacting appropriately with the public, supervisors, and co-workers, and observed that she could not budget or manage money.  Id. at 683, 685-86.  The ALJ gave little weight to Dr. Karpf's opinion.

> This opinion is given little weight.  Dr. Karpf responded to information provided by [Plaintiff], which included a history of head trauma not supported by the evidence.  ([Tr. at 435-62, 680-87]).  Similarly, though Dr. Karpf assessed some impairments in memory, attention, and concentration, his opinions of moderate or marked limitations are not consistent with the longitudinal evidence.  [Plaintiff] has not engaged in cognitive or mental health therapy, despite recommendations; further, she did not testify to significant ongoing mental health limitations alleged during her May 2016 examination.  ([Id. at 730-46, 38-60]).  Therefore, after considering all the evidence from the alleged disability period, the undersigned concludes there are no more than mild limitations in functioning as a result of [Plaintiff's] mental health impairments.

Id. at 20.  With respect to Dr. Weitzner's opinion that Plaintiff's abilities to carry out very

short and simple instructions were not significantly limited, but her abilities to carry out

detailed instructions, maintain attention and concentration for extended periods, and

respond appropriately to changes in the work setting were moderately limited, id. at 69-

71, the ALJ stated as follows:

> This opinion is given partial weight.  The undersigned agrees
> the evidence supports no difficulties in social functioning and
> no more than mild limitations in activities of daily living.
> ([Tr. at 667-79, 680-87, 38-60]).  Additional evidence
> obtained at the hearing level also indicates no more than mild
> limitations in concentration, persistence, or pace; [Plaintiff]
> has not engaged in formal mental health treatment and retains
> the abilities to use the computer, drive, shop for small items,
> and watch television.  ([Id. at 38-60, 730-46]).  Therefore, the
> undersigned concludes her mental health impairments are not
> severe.

Id. at 20.

The ALJ's assessment of the doctors' opinions suffers from several deficiencies.

First, the ALJ asserts that Dr. Karpf's assessment is based on Plaintiff's recitation of a

flawed medical history of head trauma.  However, Dr. Karpf's mental status examination

("MSE"), evidencing mild impairment in attention and concentration, impairment in

recent and remote memory, and below average cognitive functioning, was based on the

doctor's observations and Plaintiff's abilities to do calculations and performance on

memory testing.  Tr. at 682.  Moreover, the ALJ found that Dr. Karpf's conclusions of

moderate and marked limitation were inconsistent with the longitudinal evidence.  Id. at

20.  However, this is a mischaracterization of the evidence.  Two weeks after Plaintiff's

October 2014 fall at St. Mary's, she saw Dr. Matarese for multiple complaints including

recurrent dizziness with instability of gait, vertigo precipitated by rapid change in body or head position, weakness and numbness in the right arm and leg, difficulty focusing her attention and concentrating, and impaired memory.  Id. at 463.  Although Dr. Matarese found that Plaintiff's concentration, attention, and memory were normal at that time, he referred Plaintiff to Dr. Amman for a neuropsychological evaluation.  Id. at 465-66.  Dr. Amman conducted a series of tests with Plaintiff on November 3, 2014, and concluded that Plaintiff suffered mild to moderate impairment of brain functioning in addition to suffering from an anxious depression regarding the effects of her injury.  Id. at 474.  As discussed in the exposition of the medical evidence, Dr. Matarese's treatment notes evidence that Plaintiff suffered on-going problems with attention, concentration, and memory, see supra at 9, until May 5, 2016, nineteen months after the St. Mary's fall, which was the first time since Dr. Amman's evaluation that Dr. Matarese noted that Plaintiff's attention, concentration, and memory were normal.  Id. at 752.  This improvement was short-lived however, as Plaintiff suffered another fall in June 2016, and thereafter, Dr. Matarese noted limited attention and concentration with persistent distractibility and impairment in memory in August 2016, id. at 753-55, which continued until he noted normal attention, concentration and memory on December 20, 2016, and thereafter.  See id. at 759 (10/27/16 – limited attention and concentration, impaired short- and long-term memory, delays in naming and word finding, trouble following one-step commands, limited fund of knowledge for current and historic events); 762 (12/20/16 – attention, concentration, memory normal); 776-77 (8/16/17 - same).

Dr. Luber's treatment notes for this period also indicate Plaintiff suffered from difficulty concentrating after the October 2014 fall, see tr. at 646 (1/3/15), with slight improvement noted on March 17, 2015, id. at 645, but subsequent notations indicating decreases in Plaintiff's memory and concentration.  See id. at 638 (4/10/15), 635 (6/9/15), 632 (8/18/15).  Thus, for at least some part of the relevant period, exceeding twelve months, the medical evidence does not support the ALJ's assessment of the opinions expressed by Drs. Karpf and Weitzner.[16]  See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  Therefore, I will remand the case for further consideration of the evidence relevant to Plaintiff's mental and cognitive limitations, reconsideration of the opinion evidence, and additional vocational testimony, if necessary.

Plaintiff also complains that the ALJ impermissibly relied on Plaintiff's abilities to drive, shop for small items, use the computer, and watch television to reject Dr. Weitzner's finding that Plaintiff had moderate limitations in her abilities to carry out detailed instructions and maintain attention and concentration for extended periods, arguing that driving, shopping, and watching television do not "reflect on a person's ability to sustain an activity or focus on a task.  Doc. 10 at 13.  Rather than characterizing any specific activities as inconsistent with a finding of moderate limitation in maintaining attention and concentration for extended periods,[17] I note that the record contains

---

[16]Dr. Karpf examined Plaintiff on May 24, 2016, and Dr. Weitzner completed her records review on June 2, 2016.  Tr. at 67, 680.

[17]There are numerous case examples wherein a medical professional or state agency consultant found moderate limitation in the ability to maintain concentration,

evidence of limitations with respect to Plaintiff's abilities to engage in these activities. For example, at the time she completed her Function Report in April 2016, Plaintiff explained that she only occasionally drives to nearby locations because she gets confused and loses her direction, which was confirmed by a third-party report from a friend.  Tr. at 321, 357.  Similarly, Plaintiff stated that she occasionally shops for necessities, taking her adult son with her, but gets extremely confused when handling money and her husband handles the bank accounts.  Id. at 50, 321-22.  Additionally, at the second administrative hearing, Plaintiff explained that her computer use consisted of checking her email once a day to once a week.  Id. at 50.  On remand, the ALJ will consider the evidence concerning Plaintiff's activities and reassess Dr. Weitzner's opinions in light of those activities.

Plaintiff also complains that the ALJ failed to properly assess Dr. Matarese's statements that Plaintiff is disabled.  Doc. 10 at 10.  In an update to Dr. Luber on October 17, 2014, Dr. Matarese included his treatment notes in which he stated, "[a]t present,

---

persistence, or pace, yet noted that the claimant could engage in the activities relied upon by the ALJ.  See e.g., Whitzel v. Colvin, Civ. No. 15-456, 2015 WL 5965209, at *7 (M.D. Pa. Oct. 13, 2015) (state agency psychological consultant found moderate limitations in abilities to carry out detailed instructions and maintain attention and concentration for extended periods, but noted that claimant could go out alone, use his personal computer, drive, shop, and manage money); Kucharski v. Colvin, Civ. No. 14-1956, 2015 WL 3466216, at *5 (M.D. Pa. June 1, 2015) (psychiatrist found moderate limitation in ability to maintain attention and concentration for extended periods, but noted that claimant could prepare easy meals, drive, go out alone, shop, pay bills, and use a checkbook); Coccarelli-Yacobozzi v. Astrue, Civ. No. 08-311, 2010 WL 521186, at *5 (W.D. Pa. Feb. 9, 2010) (state agency evaluator found moderate limitation in maintaining attention and concentration for extended periods, but noted that claimant could shop, do laundry, and drive).

[Plaintiff] is incapable of returning to any form of gainful employment until her [TBI] and spinal injuries improve." Tr. at 465. In his treatment notes dated February 14, 2018, Dr. Matarese included the following, "[Plaintiff] is currently disabled, incapable of performing any form of gainful employment. Her condition is believed to be permanent." Id. at 854. The ALJ dismissed these statements, noting that they were conclusory statements on an issue reserved to the Commissioner. Id. at 29.

The governing Social Security Ruling requires the ALJ to consider medical source opinions about any issue, including opinions on issues that are reserved to the Commissioner. SSR 96-5p, "Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," 1996 WL 374183, at *2 (July 2, 1996).[18] Such statements by treating sources must not be disregarded, although they are not entitled to controlling weight or given special significance. Id. at *3.

> The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

---

[18]As previously noted, the regulations governing the evaluation of medical evidence were amended effective March 27, 2017. See supra at 14 n.15. Social Security Ruling 96-5p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263-01 (March 27, 2017). However, because Plaintiff filed her application prior to the effective date of the new regulations, Ruling 96-5p remains applicable to consideration of the evidence in her case.

Id.  Here, although the ALJ acknowledged the statements, her only rationale for rejecting them was that they were conclusory statements on an issue reserved to the Commissioner. Tr. at 29.  While the statements, read alone, are conclusory, they are contained in Dr. Matarese's treatment notes which provide significant context.  On remand, the ALJ shall consider the statements and explain her reasoning for rejecting or accepting the statements based on the medical evidence.

Finally, Plaintiff complains that the ALJ, despite having found that Plaintiff suffered from mental limitations, failed to incorporate those mental limitations in the RFC.  Doc. 10 at 18-19.  Specifically, Plaintiff argues that the ALJ failed to include any limitation in the RFC, or in the hypothetical questions put to the VE, addressing the mild mental limitations she found in Plaintiff's areas of mental functioning (known as the Paragraph B criteria) as part of her severity determination.  Id. at 17-18 (citing tr. at 18-19).  Defendant responds that it is not error to omit mental limitations in the RFC when Plaintiff had no more than mild limitations in the functional areas.  Doc. 11 at 21-22.

In her discussion of Plaintiff's mental impairments at Step Two, the ALJ found that Plaintiff had mild limitations in the functional areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, and no limitation in the areas of interacting with others and adapting or managing oneself.  Tr. at 18-19.  The parties dispute whether the ALJ erred by failing to include these findings in the RFC assessment and VE hypothetical.

Because I have determined that the case must be remanded for further

consideration of the medical record regarding the limitations imposed by Plaintiff's

mental and cognitive impairments, I find no reason to address this claim at this point.[19]

---

[19]The Third Circuit has explained the interplay between the Paragraph B criteria, which is done at Steps Two and Three of the evaluation, with the later RFC analysis, which is done at Step Four.

> [N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three.  Those portions of the disability analysis serve distinct purposes and may be expressed in different ways  When mental health is at issue, the functional limitation categories are "used to rate the severity of mental impairment(s)[.]" SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  While obviously related to the limitation findings, the RFC is a determination of "the most [a claimant] can still do despite [his] limitations" "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p, at *2.  It "requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories[.]"  SSR 96-8p, at *4.  And, unlike the findings at steps two and three, the RFC "must be expressed in terms of work-related functions[,]" such as by describing the claimant's "abilities to:  understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id. at *6.  In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five.

Hess v. Comm'r of Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019); see also Brumfield v. Saul, Civ. No. 19-4555, 2020 WL 4934315, at *5-6 (E.D. Pa. Aug. 21, 2020) (finding no error in the failure to include limitations related to non-severe mental impairment in the RFC assessment despite finding mild limitations in the Paragraph B criteria at step two). Thus, the ALJ's failure to include limitations related to impairments found mild at steps two and three does not necessarily result in error.

IV.    **<u>CONCLUSION</u>**

The ALJ failed to properly consider the opinions offered by Drs. Karpf and Weitzner, requiring reconsideration of these opinions in light of the evidence in the record. Additionally, on remand, the ALJ should reconsider Dr. Matarese's opinions regarding disability in the context of the doctor's treatment notes. The ALJ should reconsider the RFC assessment in light of the reconsideration of the evidence related to Plaintiff's mental/cognitive impairments, and obtain additional vocational testimony if necessary.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TANIA JEAN MANCINO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  20-4234 |
| Commissioner of Social Security | : | |

## O R D E R

AND NOW, this    30th     day of November, 2021, upon consideration of

Plaintiff's request for review (Doc. 10), the response (Doc. 11), Plaintiff's reply (Doc.

14), and after careful consideration of the administrative record (Docs. 9 & 19), IT IS

HEREBY ORDERED that:

1.  Judgment is entered REVERSING the decision of the Commissioner of
    Social Security for the purposes of this remand only and the relief sought
    by Plaintiff is GRANTED to the extent that the matter is REMANDED for
    further proceedings consistent with this adjudication; and

2.  The Clerk of Court is hereby directed to mark this case closed.


BY THE COURT:


/s/ Elizabeth T. Hey
ELIZABETH T. HEY, U.S.M.J.